Good morning, Your Honor. Thomas Citron. May it please the Court, representing appellants. And if you could keep your voice up, please. I will, Your Honor. I'm battling a little bit of asthma, so I'll do my best to keep my voice up. And we'll listen carefully. Thank you very much, Your Honor. The Burlington Insurance Company made a coverage denial at a very early juncture with respect to this case, and I believe the district court erred when it decided that there was no duty to defend and no duty to indemnify. The claims of Rudy Martinez. And I base that on the information that was available to Burlington at the time it made its denial. Now, your client is Mr. Martinez, right? Correct, Your Honor. Your client is not the insured? Correct, Your Honor. Does that mean that the duty to defend argument doesn't belong to you? I don't believe so, Your Honor. Because the duty to defend would have been an obligation owed to the insured, and your client is the one who seeks to pay out as to coverage. So why does he get to argue duty to defend in addition to coverage? Because he has a judgment against the insured, which was the Crazy Horse Nightclub. I understand that, but that's for payment for coverage under the policy. That's the duty to indemnify, not the duty to defend. Correct. I understand that. So to answer to Judge Fletcher's question then, how do you become the beneficiary of the duty to defend argument since your client is not the insured? I wish I had a clear-cut answer for that for Your Honor, but my understanding of the law is that because Mr. Martinez sued the Crazy Horse and Crazy Horse believed they were entitled to a defense and they did not get one. Well, you're a judgment creditor. We get that. And we get that you have a right to claim whatever benefit the Crazy Horse was entitled to under the policy. But Judge Fletcher's question, I'll leave his question for him, but the duty to defend really applies to the insured unless there's some kind of an assignment document or something in the record that I haven't found that says that that was assigned to you. Is there any such document? There is no assignment that I'm aware of. Can I ask you this? Because I think I started out with the same confusion when I was 27. I think I've now got it clear in my head. You're only trying to seek to recover on the judgment from the insurance company, right? That's correct. You're not seeking any damages for their refusal to defend or anything like that? No. We would be on our cross-complaint, which was dismissed, seeking bad faith damages against Crazy Horse. Okay. By virtue of the fact that the judgment was not covered and paid. And what I'm saying is the district court erred in its initial assessment because there was information in Burlington's possession. Right. So let me just see if I got the relationship between the duty to defend argument and the claim that you want to prevail on for the duty to indemnify in terms of that relationship. As I understand it, the insurance company says, look, we did not have a duty to defend, and because the duty to defend is broader than the duty to indemnify, if we persuade you that there was no duty to defend, we obviously don't have the duty to indemnify. So you've at least got to get us past that. Right. Understood. And by virtue of the judgment that was entered against Crazy Horse, we're at least a third-party beneficiary of the insurance contract, which was issued to Crazy Horse. Right. But let me just put it in these terms. It could be the case, I gather, that there was a duty to defend, but in terms of the ultimate judgment that the state court issued, it was on a non-covered ground, and then you would still lose your duty to indemnify argument, right? That's correct under that scenario, but that's not the case here. Oh, no. I totally understand, but I'm just trying to get the relationship between those two, because I started out thinking, well, why are we talking about the duty to defend? You're not in a position to benefit from that. But I think it's just as a means of getting to whether there was, in fact, a duty to indemnify for this judgment, right? That's correct. Why does the policy exclusion not exclude here? So why is there coverage? There is coverage for several reasons. First of all, the information that was available to Burlington, and they're contained in the claim notes and the excerpt record at 384, is that Mr. Martinez fell while attempting to sit down on a stool, and that coupled with the supplemental crime report, which was also received by Burlington. But, no, that really is argument that goes to duty to defend. Yeah. What's the judgment say upon which you are seeking to recover? What's the ground for recovery that's at the basis of that judgment, and is that ground for recovery within the scope of the policy? Thank you, Your Honor. I'll attempt to answer it in the next lecture. The judgment itself states that there was negligence under either a but-for or a probable cause or approximate cause theory of negligence against Crazy Horse, and that the plaintiff fell from a stool, and that was the only credible evidence before the court upon which the judgment of negligence was granted. They said that assault and battery or any other causes, this is Judge Vinto's decision, any other causes are considered too speculative based on the trial testimony. Now, if somebody goes and they slip and fall in a premise while trying to sit on a stool, and the trial court determines that that's negligence and it's not connected with any assault and battery, that's a covered claim. Yeah. So I'm reading the Superior Court judgment, paragraphs 7 and 8, by preponderance of the evidence before the court, the court finds the defendant, Crazy Horse, was negligent in the hiring, supervision, and training of his security guards, and his security guards were negligent in the manner in which they handled the plaintiff that evening. By preponderance of the evidence, the court finds the negligence of the defendant was the cause of the injury of the plaintiff. And then later, the plaintiff is found to be 50 percent at fault. Paragraph 15, other causes for plaintiff's traumatic brain injury were his being taken to the ground by defendant's security officers during the scuffle or as a result of multiple blows by hand or flashlight. Without more specific evidence or expert opinions as to which the theory is the most consistent with plaintiff's injuries, the court feels attributing those theories would be too speculative. In other words, I look at this judgment as saying, this arises out of the negligence of the defendant and the defendant's employees, not out of the assault and battery, which might have happened, but the trial court says injury from that is too speculative a basis upon which to award damages. That's your argument. Correct, Your Honor. And the trial court had a full trial. I mean, Crazy Horse was represented, witnesses were called, an expert was called, and there was no evidence that the judge found credible that there was any assault and battery connected with Mr. Martinez's injury. I mean, what I was saying before is that the information provided to Burlington that was in their claim notes that I referred to at excerpt to the record 384, at the very top they say the claims examiner is putting notes into the file saying he slipped and fell while trying to, you know, sit down on a chair and hit his head. Let me frame what I think is the insurance company's best argument against your position here and get your response. You would have an easy case if the assault and battery exclusion just said, you know, any conduct involving an assault or battery, right? But it has that other clause saying basically any act or omission in connection with an attempt to suppress or prevent, right? Exactly. So that to me is, the two briefs just kind of are ships passing the night because you pretend as though that clause doesn't exist, and it seems to me that's your main obstacle here. Maybe you can address why, on the record we've got here, that that second part of the exclusion doesn't apply. I'd be happy to attempt to, Your Honor. I'm not sure I'll articulate it perfectly, but I'll do my best. If you look at the supplemental police report that's attached, and it's part of Exhibit 14,  the supplemental report which is taken from statements from the crazy horse individuals says that there were no punches thrown, no assaultive behavior by Rudy Martinez at any point in time prior to him falling and hitting his head. Thereafter, his family came over, tried to determine why Mr. Martinez was being taken out of the club, became combative with the officers, and thereafter there were some people who were pushed around and upset, and there could have been an altercation. But Mr. Martinez's actual being pulled out, according to this supplemental report of the narrative at 367 in the third paragraph, doesn't indicate that he assaulted or battered any other patron, that he was assaulted or battered by anybody who was a member of the crazy horse staff, or that any member of his party was involved in an assault and battery until well after he'd slipped and fallen and hit his head. And that information was all given to Burlington prior to them making their cover information. More importantly, both the complaint and the First Amendment complaint allege negligence, premises liability. At 386 of Burlington's claim notes, they say regardless of whether or not negligence is plain or is plain, we're going to stick with our original decision. Well, what confuses me is, you know, you're talking about the assault and battery portion of this, but when you amended your complaint, it largely followed the same original complaint. You did describe a pattern in history of physical violence, the crazy horse. Each of the causes of action continue to solely allege that Martinez's injuries arose from crazy horse's acts and remissions with regard to the employee's intentional use of physical force against him. But on the face of this, the allegations fall squarely within the assault and battery exclusion or the language in connection with what the allegation was here was that he fell. He was drunk. He fell. But if you say he didn't, then they were roughing him up again. And it all boils down to whether this is covered by the assault and battery or anything in connection with that. I don't see anywhere in the underlying action that you sought damages for falling from the barstool or suggested that he fell from the barstool as a result of crazy horse's negligence. He fell because he was drunk, right? Well, the court in the trial court, there are two problems here. First of all, Mr. Martinez was incapacitated for a long period of time when he was asked both in trial and by the police officers what happened. He had no clue, absolutely no clue. So the plaintiff's lawyer who drafted the complaint had to draft it kind of in a vacuum. His sister who was with him didn't see him hit, but he had to assume certain facts in order to plead his complaint. That being said, it's my understanding of California contract interpretation that you look at all of the factors within the possession of the insurer at the time you make your decision as to whether or not you have a complaint. When you get all done with that, though, it's attributable to the acts of crazy horse or its employees or their failure to train them in the way they've roughed up Mr. Martinez. I mean, you put it in different clothes, but it's the same situation, is it not? I disagree, and I believe that the supplemental police report which begins in excerpt to the record number 367 clearly states and was in the possession of Burlington at the time it made its determination that he was not being roughed up at the time he fell and that there was no altercation prior to him falling. And given that information, the information that was contained in their possession at the time, there was a potential for coverage. I'm not interested in the potential for coverage, but what you say is relevant to me. According to you, the evidence presented at trial was that he fell and that only after he fell was he assaulted by the employees of the club. Is that correct? There was no testimony that he was assaulted by employees at the club at trial. No testimony that he was assaulted at all? Correct. The testimony, the way I read it, maybe I missed something. That's what the whole complaint is about. My understanding was the testimony at trial was he didn't know what happened and he slipped and fell. Well, wait a minute. I'm now reading paragraph 15 of the superior court's judgment that judge writes, other possible causes for a plaintiff's traumatic brain injury were his being taken to the ground by defendant security officers during the scuffle or as a result of multiple blows by hand or flashlight without more specific evidence or expert opinions as to which theory is the most consistent with plaintiff's injuries. If the court feels attributing these theories as a cause of plaintiff's injuries, it would be too speculative. I infer from that that there was evidence at trial that the employees did hit him with hand or flashlight with multiple blows and that there was a scuffle. There must have been evidence of that. Otherwise, this paragraph makes no sense. Well, the police report, I understand and I agree with you. Were you the trial lawyer? I was not, Your Honor. Okay. Do we don't have a transcript of the trial? We do have a transcript of the trial, Your Honor. I've not read it. It's in the excerpts. I've not read it. It's Exhibit 21 to the record. And I've gone through it, Your Honor. The trial lawyer is here with me. Okay. And may be able to answer it more specifically, but I can tell the court with respect to your argument, the police report in its entirety was accepted by the trial court, including all the facts contained therein. And there is mention in the initial police report of assault and battery. But counsel, with respect, you know, you're getting back to the duty to defend again. That's not your right here. Your question is whether there's an indemnity right. And in this case, what Judge Fletcher read from the superior court's judgment makes clear that these folks were roughing up your client and that at least arguably that was the cause. No, the question is when did they do it. If they beat him up before he fell off the stool, I think there's a possible argument that his falling off the stool arose out of or was in some fashion connected with his having been assaulted. On the other hand, if he falls off the stool before any assault or battery happens, I don't see how that injury can be connected with or rising out of. So the sequence is critical to me. And that's exactly why I rely on the supplemental crime report which was provided to Burlington prior to Burlington ever making its coverage determination and Burlington putting in its claim notes he fell off the stool. And the supplemental crime report, which includes eyewitness information about what occurred, clearly states there was no assault and battery occurring prior to him falling off the stool, hitting his head, sustaining the injury, that the family's reaction was a direct result of that. Okay. Let's hear from the other side and then we'll give you a chance to respond. Thank you very much, Your Honor. Good morning, Your Honors. Thomas Holden for the Burlington Insurance Company. One of the things that counsel said and that he seems to be placing a lot of emphasis on is the idea that there was no altercation prior to Mr. Martinez supposedly falling off the stool. In fact, what the evidence shows is that the security guard who first approached Mr. Martinez and was taking him out did so because he saw what he viewed as an assaulting gesture that Mr. Martinez made towards another person on the dance floor. And then he saw the person that the assaulting gesture was made toward have a look of fright on their face and look up to him and call for help. There are multiple versions of what happened. That's only one of them. Well, he's the only one who knows that. No, there's another person who was also monitoring the dance floor who said that he saw he says this person says he thought he saw Mr. Martinez arguing with another patron on the dance floor. Not that person himself. That's Mr. Foxman who came up afterwards as the incident was starting to get out of hand and saw two people arguing and he understood that there was an argument between them and so he was trying to get him out. But Mr. Remigio, the first one who took Mr. Martinez and took him off the dance floor, saw an assaulting gesture and that's what started the whole incident. There was no, there's no statement in any of these police reports. I mean, it's not just the police reports because they then went and took, there were statements by the individual employees as well that were supplemented. There's no statement in there anywhere that somebody saw Mr. Martinez actually assault somebody. The best you've got is what you just pointed to, which was that he was on the dance floor and he gave a kind of a, like he was going to backhand the woman that was on the dance floor and she was afraid of that. There's no, there's no suggestion that Mr. Martinez intended to put her in a state of fear, which is what you'd need to have assaulted. Whether he did it or not, Mr. Remigio, the security guard, approached him to take him out because he was trying to prevent or suppress an assault. There was no assault is what I'm saying. Even under the version of the facts that you've just pointed to, there's no assault by Mr. Martinez. What the security guy sees is Mr. Martinez kind of move his hand back and there are definitely other versions in which everyone says that was unintentional, he didn't even know this woman, he wasn't directing it at her, but she was in fear and the security guard said, I better intervene and make sure I can figure out what's going on here. Because he viewed it as an assaulting gesture. Right, but that's not an assault. I'm not saying it is, I'm saying he's viewing it as an assaulting gesture. Right, the exclusion is only triggered if the insurance employees are trying to prevent or suppress an assault. And I'm saying there's no version of the facts in here in which an assault actually occurred. So if the security guard sees what he thinks is an assault and jumps in to prevent or suppress it and it's determined later, well, it wasn't really an assault, then his actions in trying to prevent or suppress what he understands to be an assault would not be within the exclusion? That doesn't seem right to me. I'm saying that there are other versions of the facts in which there is no assault of behavior. I agree with you that there are several versions of events in here that clearly would be covered by the exclusion. But as I read the police reports, there are alternative versions, conflicting versions, in which there is no assault of behavior. Again, I'll come back to the fact that we're talking about what Mr. Remigio saw. He's the only one who can say what he saw. And he said that he saw it as an assaulting gesture, and that's why he went down to get that. And there are other people who said that there was no assault of behavior that occurred. And all I'm saying is that it seems to me the duty to defend was clearly triggered. You might ultimately have been able to prevail at trial in proving up that, no, actually, an assault did occur. But there was at least information available to the insurance company suggesting that that exclusion might not apply here. Well, before they got to the point where they say that he fell trying to sit on a stool, Mr. Martinez's sister came up and clawed and grabbed, was very hostile, and clawed and grabbed Remigio. You're right. And there's conflicting versions as to the sequence of events. Some of the versions say that that happened as they were walking out before he fell. There are others that clearly say, no, none of it happened until after he had already fallen. Okay. I'm just saying, that's how I read the very conflicting police reports that are before us. But my point is Mr. Remigio was talking about what happened to him, what other people may have seen or not seen. Maybe they didn't see her doing this. Let's take what Judge Watford has just talked about, and let's assume, arguendo, that it's correct. Let's just say there was a duty to defend based upon the fact that there was a dispute about whether Mr. Martinez had threatened or assaulted somebody on the dance floor. There was no defense, but at the end of the day, the case was tried. And if you look at the judgment, it appears that the exclusion takes the coverage away under the duty to indemnify. How are we supposed to deal with the duty to defend issue versus the duty to indemnify at this stage of the proceeding? The opposing counsel has indicated that he's not looking for the duty to defend. He's just looking for the duty to indemnify because he's a judgment creditor. Does it make any difference at this point if the insurance company had a duty to defend and did not do so? It does not. If there was a duty to defend and the insurance company did not defend, whether there's coverage for the judgment still turns on the facts surrounding the incident that were at issue in the trial and were proven or not proven in the trial, and any other facts that can be brought in. And what do you have in the judgment, if anything, that supports your theory that his injuries arose out of an assault? Well, I go back to the testimony that occurred during the trial. I'm asking the first test of the judgment. You can go back to that in a minute. But is there anything in the judgment? Well, what the judge based the judgment on was the fact that the security expert who testified for the plaintiffs was really the only person who testified. Let me come back to the question I just asked you. I'm reading the judgment. What is there in the text of the judgment, if anything, that supports your argument of exclusion such that the judgment tells us that the injuries arose out of an assault? Well, from the judgment alone, we can see that there was evidence that there were assault and battery instances going on, referred to in the judgment as your Honor, referred to in the judgment. And that evidence, the judge says, that to me is inconclusive as to the cause of the injuries, and I grant the judgment based upon negligence. And it could either be negligence in not preventing Mr. Martinez from falling down or negligence in the supervision. I mean, the claim at trial was against the restaurant, not against the security guards. It was against the restaurant for negligence in training and supervising the guards. That could result either in the guards not properly handling Mr. Martinez, allowing him to fall, or it could result in them beating him. And I think also negligence in maintaining an unsafe premises. Yes. And so it could result in them beating him. And if you look at the complaint, including the First Amendment complaint, it's all about them beating him. Yeah, no, I understand what the complaint's all about, but it's more complaints that contain all kinds of nonsense. Maybe this one, too. And so the question is, what was the evidence at trial? And the evidence at trial was Mr. Martinez was asked what he remembered. He said he remembered being drugged across the dance floor. I would say dragged. He said he was drugged across the dance floor. And he was asked whether he remembered being beaten with closed fists, and he said something like that. Does that go to sequence in terms of whether that happened after or before he fell off the stool? He didn't remember anything about falling off a stool. He remembered being beaten with fists. He didn't remember anything about falling off a stool. So that testimony itself doesn't tell us whether it was before or after. It doesn't tell us whether he fell off a stool at all. Well, we know from the judgment that the judge concluded that he did. The judge was inclined to give credence to that because the security expert who was put on by plaintiff, that was the only thing he talked about. But we have a clear judgment that says I award damages from the injury suffered when he fell off the stool. So I take it that he fell off the stool. Whether he remembered it or not, he fell off the stool. The only evidence of that was the police report, which also contains all the evidence of assaults and so on. But apparently the judge deciding the case believes that evidence. Whether he did or not, that's how he decided to go. I mean, we have to look at the context in which this occurred. Please don't give me that weasel language. Whether he decided or not, that's the way he decided to go. It's obvious that that's what he believed. That's why he went there. That was the conclusion in the judgment. I agree with you. The context is a claim was tendered to Burlington for battery and assault. There were some indications in the police report that in addition to this, he may have fallen off the stool. There was no claim alleged. But I'm not interested in the duty to defend. I understand. I'm interested in indemnification. So what was actually decided as the basis for the judgment is what I'm now looking to, irrespective of whether you did or didn't have a duty to defend. My point is that what happened at the trial was, has every indicia of being a setup between the plaintiff and defendant to put in only the evidence that they wanted to put in to focus on this one aspect of the entire event. Right. You should have been in there. That's exactly what happens when you don't defend. But there was no claim for falling off a stool. The only claim was that he was beaten up and beaten with flashlights and so forth. Am I wrong in my understanding of California insurance law? I thought it was the case that when the insurer is making that initial duty to defend,  but aren't you also supposed to look at the whatever underlying evidence you've got? Yes, but it has to be evidence that relates to the claim being made. You don't have to look at it and say, gee, they have this other claim that they might make, and then therefore we should defend this because there's this other claim they might make. And the cases for that, we've cited them in our brief historic case, the microtech case from this court. And that's what we had here was there were allegations that he was beat up, he was assaulted, he was battered, he was hit with flashlights and fists and all this. There was nothing about him slipping and falling in the process of being taken out. I agree. You're right. The complaint doesn't say anything about him slipping and falling. So the cases I would look at are STORC, you said? STORC. And microtech? And microtech. And I believe we cited some other cases. ULTA, I believe, is one. Gunderson. Those are all cases that are in our brief. And they say that even if you've got evidence, like you put aside the complaint, you've got evidence before you as the insurer that says, wow, there's a potentially covered claim lurking in here. You're able just to look at the four corners of the complaint and say, well, hey, luckily for us they haven't pled that, so we can just deny a defense. I thought that was exactly the opposite. Well, no, the point is that if the evidence that you find relates to a claim that's not being made, then that doesn't give rise to a duty to defend. Well, there was a negligence claim made in the original complaint. And it was specifically about negligence in supervising these violent guards who, because they were poorly supervised and poorly trained, beat up their customers. Let me just make sure that I might have misunderstood California law. I thought the law was that if there's a potentially covered claim there, you're not able just to look at the four corners of the complaint that's before you because you know that the plaintiff may well ultimately amend the complaint to capture that covered claim. The difference is between whether the extrinsic evidence shows that the claim being made is potentially covered, which does happen certainly in plenty of cases, or evidence that shows there may be another claim that's not being made that might be potentially covered. There's a difference there. The example in Microtech is they sued for a whole bunch of intellectual property claims. They didn't also sue for defamation, I believe it was, which would have been a covered claim. Although there was extrinsic evidence that, in fact, there was defamation and they were unhappy about it and so forth. But they didn't plead it, so the court said, well, that doesn't give rise to a duty to defend because that's not the claim we're talking about. And here, I think this is the same thing. To the extent that he was injured from falling off a stool, that was not their claim. But you now seem to be saying, you know, I just don't believe this judgment because this was sort of a fraudulent lawsuit. Well, that's one of our defenses. And my only point It's a hard claim to make. I mean, you're accusing then lots of people of being in on a scam, that you've got witnesses swearing to tell the truth, that you don't do it. I'm not saying that that's a basis for summary judgment, Your Honor. I'm saying that if the court should conclude that the summary judgment we did get should be reversed, all that happens is it goes back to the trial court because we still have that defense, lack of notice, lack of cooperation, all those various kinds of defenses. The context in this is we filed a motion for summary judgment on the issues that we raised. They haven't filed a motion for summary judgment. Our motion was granted, and so all these other issues have not been explored. But from what we do know, we have an uncovered claim tendered to an insurer, some indication that there might be a different covered claim in the facts. The insurer denies the amended complaint. They don't provide the amended complaint to the insurer. They don't tell the insurer, hey, this is now suddenly a claim about a guy falling and trying to sit on a stool. Instead, they go on without letting the insurer know anything about it, go to trial, get a judgment, and then say, okay, now you have to pay us millions of dollars. You don't have to win on that because duty to defend is not an issue here. All you need to win is a judgment. But as Judge Watford pointed out, if there's no duty to defend, there's no duty to amend. I understand that. I'm inclined to think there might not have been a duty to defend. There might have been a duty to defend. I don't have to decide that question. I can decide the narrower question, which should be more favorable to you, which is to say was there coverage when we finally get to the lawsuit? And the evidence at trial, there was the police report, but the only testimony at trial was that Mr. Martinez didn't remember anything out of the stool. His sister didn't see him falling off the stool. Nobody testified they saw him falling off the stool. The only testimony about what happened was he was dragged across the dance floor. He was beaten with fists. The testimony is not to the extent, full extent of the evidence. No, it's not. But that was the testimony. The only testimony about him falling off the stool came from the expert, and he wasn't testifying, obviously, about anything he knew. He was just testifying about the police report. So the only evidence was that nobody saw this happen except people who the day after the incident, the security guards were saying, no, no, no, we didn't hit him. We didn't beat him at all. He just fell off the stool. Nobody the night before said anything about a guy falling off the stool, and neither the witnesses who were with Mr. Martinez nor the security guards said anything about him falling off the stool the initial night when the police arrived. It was only later they came up with that. Because the judge says he fell off the stool, and that caused the injury. But there's also evidence that it was related to Mr. Remigio seeing an assaulting gesture and trying to prevent assault and to the various assaults and batteries that were going on as they were trying to get him out. We have to send it back to the district judge. So the district judge reads the transcript carefully, tries to figure out from the evidence how this injury occurred, whether before or after any assault, whether there was any assault. I have trouble as a matter of summary judgment saying there is no possibility that he fell off the stool and was thereafter beat up by the security guards. Well, with respect to the judgment, the insurance company is bound by a judgment only if it reached a duty to defend, which here we don't believe it did, and it's bound only to the facts essential to the judgment. Other facts that the judge might have found that were not essential to the judgment are not binding at all. I'm not sure that helps you. Well, I think it helps us because it puts aside what the judge said about what happened and didn't happen. The question is, did this, whether he fell off the stool or not, did it arise out of assault or battery or acts or omissions in connection with the prevention or suppression? There's nothing in that judgment that tells me whether it arose out of or didn't arise out of. But the point is, we're not bound by the judgment. We look at the evidence behind the judgment, and that's where we get into all the – That's why I'm saying we have to reverse the summary judgment and have the district judge go back and look at the evidence. Well, the district judge – and that's why I'm pointing to the evidence, is that there were assaults and batteries happening all around this incident of him supposedly falling off the stool. Maybe not. We've got conflicting evidence. Okay.  Thank you. Thank you. Would you put a minute on the clock, please? Very briefly, Your Honor. There's nothing in the record suggesting that there was an assault and battery at the trial court level, and we can't relitigate what happened in the trial court. If Burlington wanted to control the defense of this case or wanted to defend the case with a reservation of rights, they were fully capable of doing that and had the opportunity to do that. There were covered claims presented prior to the lawsuit being filed that they considered and put into their own claim notes that would have been covered claims, and they have an obligation to defend those claims. If they don't, they're stuck with the result. I mean, that's my understanding of the law, and Mr. Martinez has a judgment. He has a significant brain injury, and the judgment that was rendered by the trial court after a trial on the merits with both parties represented was for negligence, and negligence for him falling off the stool. This is extraneous to the legal merits here. Why is this a lawsuit between you and the insurance company instead of just a lawsuit trying to enforce the judgment against the club? Are they insolvent? They are. Okay. That's my understanding, Your Honor. But I don't think that prevents us from processing the case as a judgment creditor. And the one thing I wanted to point out in the trial transcript for the benefit of the court is there was uncontroverted testimony in trial. It's an excerpt of the record 428, beginning at lines 27, which says, and it's the expert saying, and what I'm referring to is it was clear he had not threatened anybody, speaking about Mr. Martinez. He had not had bad words with anybody. There was no verbal altercation or impending physical altercation prior to his fall. But that goes to the duty to defend, does it not? It does, Your Honor, but it goes to the evidence supporting the judgment for which Mr. Martinez is a creditor. And Burlington had an opportunity to defend the case with a reservation, control its defense. It chose not to do so, even though it was presented evidence of a potentially covered claim. And so your argument here is not necessarily that they had a duty to defend, because that's, in a sense, irrelevant to your client, to whom the duty to defend was. But relevant to the objection that Burlington now seems to be making of, well, wait a minute, we had no control over this trial, and so we can ignore all the evidence we don't like because we don't like that evidence. Look, if you make the decision not to defend the case and you get stuck with the result, you're stuck with the result. Okay. It's an unfortunate remedy, but I believe that's the law. Okay. Thank you very much. Thank you very much, Your Honor. Burlington Insurance v. Martinez now submitted for decision, and that completes our argument calendar for this morning. Thank you.
judges: Fletcher, Smith, Watford